IN THE COURT OF CRIMINAL APPEALS

OF TEXAS





NO. PD-894-04
 




 

ANIBAL MONTANEZ A/K/A IVAN MONTILLA-PENA, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE TENTH COURT OF APPEALS


ANGELINA COUNTY





 Keasler, J., delivered the opinion of the Court in which Price, Hervey,
Holcomb, and Cochran, JJ., joined. Keller, P.J., concurred without opinion. Meyers, J.,
filed a dissenting opinion. Womack, J., filed a dissenting opinion. Johnson, J., filed a
dissenting opinion. 


O P I N I O N 



 Anibal Montanez filed a motion to suppress claiming that his consent for the search
of the vehicle, which yielded cocaine, was not voluntary. The trial court denied the motion. 
Reversing the trial court, the court of appeals held that the record does not contain clear and
convincing evidence to support the trial court's finding. (1) We find that the court of appeals
correctly determined that the issue was preserved for review, but erred in failing to apply the
standard of review provided in Guzman v. State. (2)

Facts and Procedural History


 Montanez is a native of Puerto Rico. With the assistance of an interpreter, he pled
guilty to possessing 400 grams or more of cocaine and was sentenced to twenty years'
imprisonment, in accordance with his plea agreement with the State. Before entering his
plea, however, Montanez filed a motion to suppress, asserting that the search of the vehicle
he was driving was conducted in violation of the Texas and United States Constitutions. He
argued that he had been illegally detained and that the search was unsupported by probable
cause or voluntary consent. 

 At the suppression hearing, Investigator Bridges, a member of the Deep East Texas
Regional Narcotics Trafficking Task Force, testified that he stopped the vehicle Montanez
was driving for traffic violations. He "felt like some type of illegal activity was occurring"
based on his conversations with Montanez and his passenger, so he asked for Montanez's
consent to search the vehicle. 

 On cross-examination, Bridges acknowledged that Montanez did not speak English
very well and that he had to repeat some questions, including his request for consent. But
he stated that Montanez answered his questions and they had "communicated quite well." 
Bridges testified that after his second request for consent, Montanez acquiesced by motioning
toward the back of the vehicle and stating, "You want to check it out, you can check it out." 
 While Bridges was conducting a search of the vehicle, another officer, a K-9 handler,
arrived at the scene with a dog certified to detect the presence of narcotics. The handler
testified that the dog gave a positive alert at the rear of the vehicle. Bridges testified that he
told Montanez and his passenger that they were under arrest and then directed them to follow
him to the task force headquarters in their vehicle. At the task force headquarters, the gas
tank was removed from the vehicle, revealing seven kilos of cocaine. 

 During the suppression hearing, a videotape from Bridge's patrol car showing the
traffic stop was offered by the State and admitted into evidence without objection from
Montanez. Part of the video was shown, and an interpreter translated the recorded speech
from English to Spanish for Montanez. At the end of the hearing, the trial judge stated that
he would review the entire video and allow time for additional briefing before rendering a
decision. The hearing concluded, and the trial judge stated that he anticipated making a
ruling the following day. The record, however, does not contain an order from the trial judge
denying Montanez's motion to suppress.

 Montanez appealed the trial judge's decision to deny his motion to suppress, alleging,
among other things, that the judge erred in ruling that Montanez's consent was voluntary
because he did not "speak and understand enough English to even be able to give informed
consent[.]" The State argued that the court of appeals should dismiss Montanez's appeal for
lack of jurisdiction because Montanez's notice of appeal did not comply with Texas Rule of
Appellate Procedure 25.2(b) and because the trial court never ruled on his motion to
suppress. 

 Addressing the State's arguments, the court of appeals found that Montanez filed an
amended notice of appeal under Rule 25.2(b), curing any error with the first notice of
appeal. (3) Further, citing Texas Rule of Appellate Procedure 33.1(a)(2)(A), the court stated
that even though the record did not contain an order denying the motion to suppress, "We
will imply an adverse ruling in light of the events that took place after the hearing, including
a certification by the court of Appellant's right to appeal based on a pre-trial ruling." (4)

 The court went on to address whether the trial court erred in finding that the State
proved by clear and convincing evidence that Montanez's consent to search was voluntary. (5) 
The court stated it "reviewed the totality of the circumstances in light of the State's burden
of proof on the issue of consent" and then held, "Giving proper deference to the trial court's
determination, we nevertheless conclude that the record of the suppression hearing does not
contain clear and convincing evidence to support the trial court's finding that Appellant freely
and voluntarily consented to the search." (6) The court reversed the judgment of the trial court
and remanded the case to trial court for further proceedings. (7) 

 We granted the State's petition for discretionary review, which asks us to consider 
whether the court of appeals erred "in its review of the trial court's denial of the appellant's
motion to suppress by applying a legal-sufficiency standard of review, instead of applying
the standard of review mandated by this Court in Guzman . . . [.]" But before we address this
issue, we will, on our own initiative, re-examine whether the court of appeals correctly
decided that the record supports that an implied adverse ruling on Montanez's motion to
suppress was made by the trial court. (8) Whether the record reflects that the trial judge
implicitly overruled Montanez's motion to suppress is a threshold issue that the State briefed
and Montanez had an opportunity to brief (9) in the court of appeals.

Preservation of Error

 In order to raise a complaint on appeal, Rule 33.1(a) requires, among other things, that
the record show the trial court "ruled on the request, objection, or motion, either expressly
or implicitly . . ." (10) When interpreting the predecessor to Rule 33.1(a), Texas Rule of
Appellate Procedure 52(a), we stated that "[a] trial court's ruling on a matter need not be
expressly stated if its actions or other statements otherwise unquestionably indicate a
ruling." (11) The record must sufficiently reflect that the trial court ruled adversely on a
motion. (12)

 The court of appeals, with Chief Justice Gray dissenting, held that there was an
implied adverse ruling based on "the events that took place after the hearing, including a
certification by the [trial] court of Appellant's right to appeal based on a pre-trial ruling." (13) 
In dissent, Chief Justice Gray stated: "if an adverse ruling could be implied merely from the
fact of an appeal, then no appellate issue could ever be forfeited by lack of a ruling." (14) He
added, "It would have been trivially simple for Appellant to ask for a ruling, make a bill of
exception, object to the trial court's failure to rule, or supplement the record on appeal; but
he failed to do so." (15) 

 We find that the majority of the court of appeals is correct. The record reflects that
the trial judge implicitly overruled Montanez's motion to suppress. While the fact that the
trial judge ultimately found Montanez guilty is a factor to be considered in determining
whether the trial court ruled adversely on his motion to suppress, it is not dispositive. (16) 
Indeed, a defendant can abandon a motion to suppress before entering a guilty plea. 

 Next, although we understand Chief Justice Gray's concern, the record here reveals
more than just the fact of an appeal by Montanez. At the end of the hearing on Motanez's
motion to suppress, the trial judge stated: 

 I would assume that I can probably review the tape this afternoon. But I may
wait till tomorrow to have it - - to have the opportunity to read whatever the
State's brief before I - - where I can see where both of you are coming from
and then view the tape, and I'll rule. 


The last line on the trial court's docket sheet states, "appeal preserved as to issues
presented[.]" Montanez's amended notice of appeal also states, "This is notice of the
defendant's right to appeal to the court of appeals from the judgment or other appealable
order in this case." Included on the document containing Montanez's amended notice is the
trial judge's certification of Montanez's right to appeal. The trial judge certified that
Montanez's appeal "is in a plea-bargain case, and is on matters that were raised by written
motion filed and ruled on before trial." 

 To require that Montanez have requested a ruling, made a bill of exception, objected
to the trial court's failure to rule, or supplemented the record on appeal, in order to have
preserved the issue for appellate review, as suggested by the dissent, would directly conflict
with the plain language of Rule 33.1(a)(2)(A) that permits an implicit ruling. We find that
the actions and statements of the trial judge "unquestionably indicate" that the judge
overruled Montanez's motion to suppress. (17) 

Applicable Standard of Review

 Voluntary consent to search is a well-established exception to the warrant and
probable cause requirements of the Fourth Amendment to the United States Constitution. (18) 
The federal constitution requires the State to prove voluntary consent by a preponderance of
the evidence. (19) Under Article I, Section 9 of the Texas Constitution, however, the State must
prove by clear and convincing evidence that consent was given voluntarily. (20) 

 Here, the court of appeals held: "Giving proper deference to the trial court's
determination, we nevertheless conclude that the record of the suppression hearing does not
contain clear and convincing evidence to support the trial court's finding that [Montanez]
freely and voluntarily consented to the search." (21) Citing our opinion in Zuniga v. State,
where we stated that the burden of proof at trial - beyond a reasonable doubt - affects the
standard of review that applies to a claim of factually insufficient evidence on appeal, (22) the
court of appeals stated, "The burden of proof in a trial-court hearing affects the standard by
which we review factual determinations on appeal." (23) 

 Disagreeing with the majority again, this time with the manner in which the appellate
court addressed the merits of Montanez's claim, Chief Justice Gray stated that the majority
applied the wrong standard of review because the court failed to give "'almost total
deference'" to the trial court's findings. (24) Similarly, in its petition for discretionary review,
the State argues that the court of appeals improperly reviewed the alleged error by using
sufficiency of the evidence as the standard of review when deciding whether the trial court
erred in denying Montanez's motion to suppress. The State maintains that the imposition of
such a standard "fails to afford the required deference to the trial court's factfinding
decision." The State contends that the court of appeals should have applied the standard of
review set forth in Guzman.

 In Guzman, we determined that when reviewing a trial court's decision to deny a
motion to suppress, an appellate court "should afford almost total deference to a trial court's
determination of the historical facts that the record supports especially when the trial court's
fact findings are based on an evaluation of credibility and demeanor." (25) An appellate court
"should afford the same amount of deference to trial court's rulings on 'application of law
to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those
ultimate questions turns on an evaluation of credibility and demeanor." (26) Finally, an
appellate court may conduct a de novo review where the resolution of mixed questions of law
and fact do not turn on an evaluation of credibility and demeanor. (27)

 Moreover, in State v. Ross, we said that where a trial court does not enter any findings
of fact when denying a defendant's motion to suppress, an appellate court must view the
evidence "in the light most favorable to the trial court's ruling" and "assume that the trial
court made implicit findings of fact that support its ruling as long as those findings are
supported by the record." (28) 

 We agree with the State and Chief Justice Gray. Our precedent, as demonstrated by
the cases discussed below, establishes that when an appellate court is asked to decide
whether the State proved voluntary consent to search by clear and convincing evidence, the
applicable standard of review is that set out in Guzman. 

 In Carmouche v. State, we found that the court of appeals erred when it found that the
State proved by clear and convincing evidence that the search of the appellant's pants, which
revealed cocaine, was supported by free and voluntary consent. (29) We began our analysis by
referring to the standard of review that applies to a trial court's determination of historical
facts that are supported by the record when the findings are based on an evaluation of the
credibility and demeanor as stated in Guzman. (30) However, pointing out that the appellant's
case presented a unique set of facts, we declined to afford "'almost total deference' to the
trial court's implicit findings . . . ." (31) In doing so, we stated that the trial judge's decision to
overrule the appellant's motion to suppress appeared to be based on a finding that the search
was supported by probable cause. (32) We also determined that the nature of the evidence
presented on the videotape of the stop did not depend "'on an evaluation of credibility and
demeanor.'" (33) We found that the videotape presented "indisputable visual evidence" that
contradicted "essential" portions of the officer's testimony and stated, "we cannot blind
ourselves to the videotape evidence simply because . . . [the testimony of the officer] may,
by itself, be read to support the Court of Appeals' holding." (34) 

 In Martinez v. State, the appellant, on direct appeal under Article 37.071, Section 2(h)
of the Code of Criminal Procedure, challenged the trial judge's decision to deny his motion
to suppress evidence found in his bedroom at his mother's home. (35) In addition to claiming
that his mother did not have authority to consent to the search of his bedroom, he also argued
that his mother's consent was not shown to have been voluntary by clear and convincing
evidence. (36) When addressing whether the appellant's mother voluntarily consented to the
search, we stated that our review of the record of the suppression hearing would be conducted
under the standard of review provided in Guzman. (37) After viewing "the historical facts in the
light most favorable to the trial court's ruling[,]" we held "that the mother's consent was
voluntary." (38) 

 In Manzi v. State, we granted the appellant's petition for discretionary review to decide
whether the deferential or the de novo standard of review set out in Guzman "applies to a trial
court's determination of historical facts when that determination is based solely on
affidavits." (39) At trial, the appellant filed a motion to suppress methamphetamine discovered
by police during a search of his hotel room that the appellant claimed was conducted without
his voluntary consent. (40) The trial judge denied the motion based only on opposing affidavits
from the appellant and the State. (41) The court of appeals determined that it would review the
trial court's resolution of the historical facts under the deferential standard of review, (42) and
held that the "trial court did not err in finding there was clear and convincing evidence that
appellant voluntarily consented to the search of his hotel room." (43) We found that the court
of appeals applied the correct standard of review. (44) In doing so, we stated: "Trial courts are
the traditional finders of fact, and their determinations of historical facts are entitled to
deference." (45)

 In this case, when determining whether the trial judge erred in denying Montanez's
motion to suppress, the court of appeals applied a factual sufficiency standard of review. The
court's decision to apply such a standard of review is shown by the following: (1) the court's
determination that its review of the factual determinations made by the trial court is affected
by the clear and convincing evidence burden of proof, which applied to the State at the
suppression hearing; and (2) the court's conclusion that the record does not contain clear and
convincing evidence to support the trial court's finding that Montanez's consent to search was
voluntary. By applying this standard, the court of appeals failed to afford any amount of
deference to the trial court's determination of the historical facts that are supported by the
record. Such an approach impermissibly eliminates the abuse of discretion standard of review
provided in Guzman. The fact that the State bore the burden of proving by clear and
convincing evidence that Montanez voluntarily consented to the search at the suppression
hearing does not change the standard of review on appeal. In its petition for discretionary
review, the State maintains that the burden of proof is "incorporated into the ultimate decision
as to whether the trial court abused its discretion . . . ." We agree. The issue is whether, after
affording almost total deference to the trial court's determination of historical facts that are
supported by the record, the trial court abused its discretion by finding that the State proved
by clear and convincing evidence that Montanez voluntarily consented to the search of the
vehicle. 

 While we conclude that the court appeals applied the wrong standard of review, we
recognize our precedent is somewhat unclear as to which standard of review under Guzman,
deferential or de novo, applies to the videotape of the traffic stop and subsequent search. In
Carmouche, we stated that we would not give "almost total deference" to the historical factual
determinations made by the trial court, in part, because "the nature of the evidence in the
videotape does not pivot on an evaluation of credibility and demeanor." (46) Later, in Manzi, we
held that the deferential standard of review applies to a trial court's determination of historical
facts when that determination is based solely on conflicting affidavits. (47) We reasoned that
"Guzman did not purport to hold that historical fact issues could be reviewed de novo if
credibility and demeanor considerations were absent." (48) We also noted, "[i]n Anderson v.
Bessemer City, the Supreme Court held that appellate courts should review a trial court's
determination of historical facts under a deferential standard, even if that determination was
not based on an evaluation of credibility and demeanor." (49) We went on to quote the following
excerpt from Anderson:

 The rationale for deference to the original finder of fact is not limited to the
superiority of the trial judge's position to make determinations of credibility.
The trial judge's major role is the determination of fact, and with experience in
fulfilling that role comes expertise. Duplication of the trial judge's efforts in
the court of appeals would very likely contribute only negligibly to the accuracy
of fact determination at a huge cost in diversion of judicial resources. In
addition, the parties to a case on appeal have already been forced to concentrate
their energies and resources on persuading the trial judge that their account of
the facts is the correct one; requiring them to persuade three more judges at the
appellate level is requiring too much. As the Court has stated in a different
context, the trial on the merits should be "the 'main event' . . . rather than a
'tryout on the road.'" For these reasons, review of factual findings under the
clearly-erroneous standard -- with its deference to the trier of fact -- is the rule,
not the exception. (50)


 We find the Supreme Court's rationale in Anderson equally applicable to the videotape
evidence in this case. Therefore, we hold that the deferential standard of review in Guzman
applies to a trial court's determination of historical facts when that determination is based on
a videotape recording admitted into evidence at a suppression hearing. 

Conclusion

 Having determined that the court of appeals applied the incorrect standard of review,
we reverse the judgment of the court of appeals and remand this case to that court for further
proceedings consistent with this opinion. 


DATE DELIVERED: APRIL 26, 2006 

PUBLISH

1. Montanez v. State, 143 S.W.3d 344, 346 (Tex. App. - Waco 2004).
2. 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
3. Montanez, 143 S.W.3d at 345 n.1; see Bayless v. State, 91 S.W.3d 801, 806 (Tex.
Crim. App. 2002).
4. Id. 
5. Id. at 346. 
6. Id.
7. Id. at 348. 
8. Tex. R. App. P. 66.1.
9. Tex. R. App. P. 38.3.
10. Tex. R. App. P. 33.1(a)(2)(A); see also Gutierrez v. State, 36 S.W.3d 509, 510-11 (Tex. Crim. App. 2001). 
11. Rey v. State, 897 S.W.2d 333, 336 (Tex. Crim. App. 1995).
12. Id. at 337.
13. Montanez, 143 S.W.3d at 345 n.1, 348 (Gray, C.J., dissenting).
14. Id. at 348 (citing Gutierrez v. State, No. 14-96-01017-CR (Tex. App. - Houston
[14th] 2001, pet. ref'd), 2001 Tex. App. LEXIS 4645, at *6-9) (not designated for
publication)).
15. Id.
16. But cf. Corpus v. State, 931 S.W.2d 30, 31 (Tex. App. - Austin, pet. dism'd)
(holding that the county court impliedly ruled on the appellant's motion to suppress blood
alcohol tests where the court did not hold a pre-trial hearing and it found the appellant
guilty of driving while intoxicated).
17. Rey, 897 S.W.2d at 336.
18. Carmouche v. State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (citing
Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); State v. Ibarra, 953 S.W.2d 242,
243 (Tex. Crim. App. 1997)). 
19. Id. (citing Ibarra, 953 S.W.2d at 245).
20. Id.
21. Montanez, 143 S.W.3d at 346.
22. 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).
23. Montanez, 143 S.W.3d at 346 n.4.
24. Id. at 348-49 (citing Rayford v. State, 125 S.W.3d 521-28 (Tex. Crim. App.
2003); Guzman, 955 S.W.3d at 89).
25. 955 S.W.2d at 89.
26. Id.
27. Id.
28. 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).
29. 10 S.W.3d at 327, 332-33 (Tex. Crim. App. 2000). 
30. Id. at 332.
31. Id. 
32. Id. 
33. Id. 
34. Id. 
35. 17 S.W.3d 677, 681-82 (Tex. Crim. App. 2000). 
36. Id. at 682-83 n.3.
37. Id. at 683.
38. Id. 
39. 88 S.W.3d 240, 241 (Tex. Crim. App. 2002). 
40. Id. 
41. Id. 
42. Id. at 242; Manzi v. State, 56 S.W.3d 710, 715-26 (Tex. App. - Houston [14th
Dist.] 2001).
43. Manzi, 56 S.W.3d at 719. 
44. Manzi, 88 S.W.3d at 244.
45. Id.
46. 10 S.W.3d at 332.
47. 88 S.W.3d at 241.
48. Id. at 243.
49. Id. (original emphasis) (citing Anderson v. Bessemer City, 470 U.S. 564, 573-74
(1985)).
50. Id. (citing Anderson, 470 U.S. at 574-75).